U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED LAFAYETTE

FEB 03 2015

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| Taj Al Khairat, Ltd | Civil Action No. 13-02609 |
| versus | Judge Richard T. Haik, Sr. |
| Swiftships Shipbuilders, L.L.C. | Magistrate Judge C. Michael Hill |

**MEMORANDUM RULING**

Before the Court is a Motion For Summary Judgment filed by plaintiff, Taj Al Khairat, Ltd ("Taj") [Rec. Doc. 24], defendant, Swiftships Shipbuilders, L.L.C.'s ("Swiftships") Opposition thereto [Rec. Doc. 29], and Taj's Reply thereto [Rec. Doc. 33]. For the reasons that follow, the Court will grant Taj's motion.

*I. Background*

Taj is an Iraqi limited partnership involved in investment in, management of and consulting on projects in various industries in Iraq and the broader Middle East. On or about August 16, 2011, Taj entered into a Settlement Agreement with Swiftships to resolve disputes arising under a Master Pledge Agreement ("MPA") entered into between affiliates of Taj and Swiftships in March 2010. The Settlement Agreement was executed by Calvin Leleux, the owner of Swiftships at that time, and Saifaldin D. Rahman ("Rahman"), the U.S. representative of Taj through it's U.S. subsidiary, Crown Contracting, Inc. Rahman, as a director of Taj, was authorized to execute agreements on behalf of Taj, but had no ownership interest in Taj.

The Settlement Agreement contained a choice-of-law provision providing that the Settlement Agreement "shall be governed by the laws of the State of Texas." Under the Settlement Agreement, Swiftships was obligated to pay Taj a lump sum in the amount of $5,250,000 by December 1, 2011, or to pay a series of monthly installments beginning on March 1, 2012, ending on October 1, 2013, and totaling $6,800,000 according to a payment

schedule attached to the Settlement Agreement. Swiftships made only one payment of $100,000 to Taj under the Settlement Agreement, and failed to make any other monthly installment payments totaling $6,700,000 due between April 1, 2012 and October 1, 2013. Under the Settlement Agreement, Taj was entitled to a default judgment against Swiftships for failure to make timely payments under the agreed schedule. Swiftships expressly waived the right to contest entry of such a default judgment in the Settlement Agreement.

In October 2012, Swiftships entered into a contract with the South Oil Company in Iraq to build and supply two maintenance vessels to the South Oil Company (the "SOC Contract"). Rahman, who is an officer of IWG, Inc. ("IWG"), assisted Swiftships in winning the SOC Contract. IWC provides consulting, logistics and construction services to non-Iraqi companies which do business in Iraq. IWG and Taj are not affiliated. In February 2013, Swiftships and IWG entered into a Master Service Agreement ("MSA") pursuant to which Swiftships agreed to pay IWG to advise and support Swiftships in the performance of its obligations under the SOC Contract. A choice-of-law provision in the MSA provides that New York law governs the agreement. The MSA contains a merger clause which states:

> this Agreement, together with all Statements of Work, Exhibits, and attachments hereto constitutes the entire agreement between the parties and supersedes any oral promises, proposals, representations, understandings and negotiations between the parties respecting the subject matter hereof.

R. 24, Ex. 7, MSA § 15.11.

ICS Marine, Inc. ("ICS Marine"), acquired a 51% interest in the parent company of Swiftships in August of 2012. Shehraze Shah ("Shehraze") and Khurram Shah ("Khurram") are the principals of ICS Marine. In performing "due diligence" prior to finalizing their 51% acquisition in Swiftships, Shehraze and Khurram, with their attorney, Ashraf Nubani, met with Rahman in July of 2012—after the Settlement Agreement between Swiftships and Taj

2

was signed but before the MSA between Swiftships and IWG was executed.[1] Only one meeting occurred between all of these parties prior to the signing of the MSA between Swiftships and IWG and the parties agree that this was the only meeting prior to the execution of the MSA at which both the SOC Contract and Settlement Agreement between Swiftships and Taj were discussed ("the Meeting").

Taj filed this lawsuit for breach of contract on September 5, 2013, asserting that it is entitled to a default judgment against Swiftships for the remaining amount owed of $6,700,000 and that it is owed reasonable attorneys' fees as authorized by § 38.001(8) of the Texas Civil Practice and Remedies Code. In its motion for summary judgment, Taj moves the Court to grant its motion for summary judgment finding that Swiftships is in breach of the obligations under the Settlement Agreement.

## II. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue as to any material facts, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Factual controversies are resolved in favor of the non-moving party only if there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (*en banc*). The court must determine whether there are any genuine issues of material fact which preclude judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## III. Analysis

Swiftships does not dispute that it signed the Settlement Agreement, or that it only

---

[1] There are discrepancies in the witnesses' testimony as to the location, exact date of the meeting and who attended in person or by telephone.

3

made one payment pursuant to the Settlement Agreement—defaulting on the additional payments totaling $6,700,000 required between March 1, 2012 and October 1, 2013. Instead, Swiftships contends that it contracted for IWG's services under the MSA with the parties' understanding that amounts paid to IWG under the MSA would satisfy Swiftships' obligations to Taj under the Settlement Agreement and release Swiftships of any further obligation to make payments to Taj under the Settlement Agreement. Hence, Swiftships asserts, "a novation of the Settlement Agreement occurred between the parties that extinguished the old obligations and created a new agreement." *R. 29*. In its opposition memorandum, Swiftships argues that the "understanding" was a separate and distinct oral agreement between Swiftships and Taj which created a new oral agreement in place of the Settlement Agreement. Swiftships also argues, in the alternative, that the Settlement Agreement is not an enforceable contract.

A. *Was there a Novation of the Settlement Agreement*

A novation is the substitution of a new agreement between the same parties or the substitution of a new party on an existing agreement so that only the new obligation may be enforced. *Honeycutt v. Billingsley*, 992 S.W.2d 570, 576 (Tex.App.-Houston, 1999). Under Texas law, "[a] novation occurs when the party alleging this affirmative defense establishes: (1) the validity of a prior obligation, (2) an agreement among all parties to accept a new contract, (3) the extinguishment of the prior obligation, and (4) the validity of the new agreement." *Farkooshi v. Afisco Interest, LLC*, 2014 WL 4161708, 4 (Tex.App.-Houston, 2014). A new contract operates as a novation only if the parties to both contracts agree that the obligations of the new contract are to be substituted for, and operate as a discharge of, the obligations of the previous agreement. *In re Bath Junkie Franchise, Inc.*, 246 S.W.3d 356, 364 (Tex.App.-Beaumont, 2008). Ultimately, whether a new contract operates as a

4

novation of a previous agreement is a question of intent. *Id*. Because a novation is never presumed, intent must be clear from the evidence. *Id*. The burden of proving a novation rests upon the one who asserts it. Taj asserts that Swiftships has failed to prove that a fully-formed oral agreement was reached which establishes novation.[2] The Court agrees.

The record contains the deposition testimony of each person present at the Meeting wherein an "understanding" was allegedly formed and became an oral agreement in which Swiftships would be relieved of its written obligation to make payments totaling $6,700,000 for a debt owed to Taj. Yet Swiftships has failed to identify testimony from any of the persons present at the Meeting that supports the essential terms of the purported oral agreement. Rather, Swiftships argues that an "understanding" was formed by which payments made by Swiftships in connection with the SOC Contract—ultimately to IWG under the MSA—would satisfy and release it from its remaining payment obligations to Taj under the Settlement Agreement. The deposition testimony, however, does not support Swiftships' theory of the formation of a novation.

The Shah's attorney, Nubani, testified that the purpose of the Meeting was to discuss an agreement to protect Rahman's rights with respect to his role in bringing the SOC Contract opportunity to Swiftships, which was done in the MSA, and to "facilitate the relationship between the parties... then they could produce an agreement; they can bring the contract, the underlying SOC contract to fruition, and ... deal with each other in future business...." *R. 24-4, Nubani Dep. 49:7-50:17*.

As to the parties' discussion of the debt owed by Swiftships to Taj, Nubani stated that "the debt owed ... was ... a also fleeting, you know, part of the discussion" at the Meeting,

---

[2] Taj further asserts that even if an oral agreement was reached at the Meeting, because Shehraze and Khurram did not possess an ownership interest in Swiftships at the time of the Meeting, they were unable to bind Swiftships in any agreement. *R. 24-4, S. Shah Dep. 54:19-22; K. Shah Dep. 42:14-43:6*.

and that the only statement he could recall Rahman making concerning Taj was that Rahman "felt a huge responsibility to Taj" and that "in order for business to - to move forward between the parties [Rahman] wanted to see Taj, quote-unquote taken care of.... but there wasn't any detailed discussion about the underlying issues that brought the parties to that point regarding Taj." *Id., 45:21-23; 53:3-22.* With regard to the Shah's statements related to the Taj debt, Nubani stated that Khurram said such things as "we're starting on a clean slate or, you know, by letting bygones be bygones and that we're moving forward." *Id. 53:23-54:13.*

> Nubani's testimony as to any agreement reached between the parties was as follows:
>
> to be fair to everyone involved, there was – I don't know if there was ever a formal sitting down between all of the parties in this matter.
>
> To the extent that there could be, you know, a detailed recollection of each of the parties, because each of the parties knew something but no one had the full picture at any given time.... So I guess the reason I'm saying this is to be fair to everyone, that people were talking based on their assumptions .... what it meant at the time, I couldn't tell.

*Id., 54:15-23; 55:12-14; 55:20-21.*

When asked whether the Meeting discussions involved the Taj debt, Shehraze testified that Rahman stated, "we will settle all the past dues, and we will move forward if we can procure this contract, the SOC contract, and the performance bond." *Id., S. Shah Dep., 38:19-22.* When asked the specific question as to whether he came away "with the understanding that money that would be generated... by a transaction of entering into the SOC contract was going to extinguish the ... Taj debt, under the Settlement Agreement....," Shehraze stated "That is correct." *Id., 52:2-8.* As confirmation of such an agreement, he stated that his conversation was passed on to Khurram, and Khurram and [Rahman] have – have had extensive, numerous dialogues about the future with [Rahman] and Swiftships."

Khurram testified that "it was inferred that this entire discussion was about how do

6

we move forward, and so there was—there was a notion ... you've tried to collect and you haven't gone anywhere. You can collect from a big fat zero and get lucky, or we can work together and collect together. So this was kind of the notional setting." *Id., K. Shah Dep. 43:25-44:18*. When specifically asked if he came "away with the understanding that the outstanding debt to Taj would be resolved through the mechanism that eventually became the [MSA]," Khurram responded that he "specifically recall[ed] using the words 'bygones are bygones' and 'let's move forward,' and [Rahman] agreed, yes, we're gonna move forward." *Id. 44:21-45:3*. He then affirmed he understood the issue would be resolved by entering into the MSA. *Id., 45:4-48:5*. Thereafter, he stated, "I don't recall distinctly stating that the monies – I mean, the idea was that, okay, let's move forward.... I'm very clear what moving forward means, and I don't know what part of that [Rahman] didn't rec—didn't understand." *Id., 50:15-19*.

Finally, Rahman's deposition testimony clearly establishes the only discussion about the Taj debt after the Meeting involved Khurram's concern that there was not enough profit margin for Swiftships in the MSA with IWG to also make debt payments to Taj. In response, Rahman advised him to "make a good faith offer to Taj to pay their obligations." *Id., Rahman Dep., 44:3-45:22*. Ultimately, Rahman testified that he never made an agreement on behalf of Taj: (1) to accept less than the $6.8 million provided for in the Settlement Agreement; or (2) to apply amounts paid to IWG under the MSA to repay amounts owed to Taj under the Settlement Agreement. *Id., 66:25-67:12*.

Swiftships contends that the foregoing testimony establishes an oral agreement was reached between the parties in that Taj agreed to release a direct claim to $6.7 million and to accept payments made to a third party (IWG) in satisfaction of that obligation. The Court finds that nothing in the testimony of the parties permits the conclusion that a meeting of the minds ever occurred concerning how the Taj debt would be handled, and therefore, a new

oral agreement was never formed which could be considered a novation of the Settlement Agreement.[3]  *See, Searcy v. DDA, Inc.,* 201 S.W.2d 319, 323 (Tex. App.—Dallas 2006) (Summary judgment granted on the ground that "there is no evidence of any meeting of the minds on the material terms of the alleged contract such to indicate he legal obligations and liabilities of the parties").

Even if the foregoing testimony could somehow be construed to mean that the Swiftships' parties had an "understanding" involving the Taj debt owed under the Settlement Agreement, it is clear that their only agreement with Rahman was the MSA between Swiftships and IWG that was ultimately made to reflect Rahman's role and contribution with the SOC Contract.  That MSA makes no mention of Taj, the Settlement Agreement, or Swiftships' obligations thereunder.

Thus, there is no evidence that Swiftships and Taj entered into a new oral agreement to become a substitute for, and operate as a discharge of, the obligations of the Settlement Agreement.  Nor does the MSA provide any language related to those obligations.  Moreover, even if the MSA could somehow be interpreted to be a novation of the Settlement Agreement, which the Court finds it can not, the merger clause in the MSA bars any novation defense.[4]  ("The plaintiff may not rely on vague 'understandings' not stated in the agreement, particularly when the express language of the merger provision forbids the introduction of such an 'understanding.'").

---

[3] The elements of a valid and enforceable written or oral contract are: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *See Hubbard v. Shankle,* 138 S.W.3d 474, 481 (Tex.App.-Fort Worth, 2004).

[4] "The purpose of a merger clause is to require the full application of the parol evidence rule in order to bar the introduction of extrinsic evidence to alter, vary or contradict the terms of the writing. The merger clause accomplishes this purpose by evincing the parties' intent that the agreement 'is to be considered a completely integrated writing.'" *Jarecki v. Shung Moo Louie,* 95 N.Y.2d 665, 669 (2001).

*B. Swiftships other challenges to the Settlement Agreement*

Swiftships further contends that the Settlement Agreement is not valid and enforceable because Crown Contracting, Inc. did not sign the agreement. The record indicates that the Settlement Agreement was "to resolve the underlying matter in the case of *Crown Contracting, Inc. v. Apex Investment Group, Inc.*, arising from the Master Pledge Agreement signed by these parties on March 17, 2010." The Settlement Agreement specified that "Swift[ships] binds Defendants Lutfe Hassan and Apex Investment Group, Inc., while Taj also binds Plaintiff Crown Contracting, Inc." R. 1, Exh. A-1, ¶ 1. It is undisputed that Crown Contracting, Inc. is the United States subsidiary of Taj—Rahman is also authorized to execute agreements on behalf of Crown Contracting, Inc.—and Apex Investment Group, Inc., whose principal is Mr. Lutfe Hassan, was the owner of Swiftships as of the date of execution of the Settlement Agreement. R. 1. Swiftships has provided no basis to argue that the Settlement Agreement can not be enforced between Taj and Swiftships.

Swiftships also contends the Settlement Agreement is invalid for lack of consideration.[5] "The existence of a written contract, however, presumes consideration for its execution. The party alleging want of consideration therefore has the burden of proof to rebut the presumption." *Doncaster v. Hernaiz*, 161 S.W.3d 594, 603 (Tex.App.–San Antonio, 2005). As previously noted, the Settlement Agreement expressly stated the purpose was "to resolve the underlying matter in the case of *Crown Contracting, Inc. v. Apex Investment Group, Inc.*" The Settlement Agreement also provided that "Taj agrees not to pursue any related litigation in the US or abroad as long as timely payments in the Appendix are being remitted." It is well settled that the surrender of a legal right constitutes valid consideration

---

[5] Lack of consideration is an affirmative defense which, under Texas law, must be asserted by written pleading or it is waived. *Bracton Corp. v. Evans Const. Co.*, 784 S.W.2d 708, 710 (Tex.App.–Hous., 1990). While the record does not support that Swiftships has properly plead the defense of lack of consideration, the Court finds the defense has no merit.

9

to support a contract. *See, Garza v. Villarreal,* 345 S.W.3d 473, 483 (Tex.App.–San Antonio, 2011). Swiftships contention related to failure of consideration is without merit.

*IV. Conclusion*

Because Swiftships' defenses are invalid and there is no genuine issue of material fact with respect to the enforceability and validity of the Settlement Agreement, Taj's Motion For Summary Judgment will be granted against Swiftships.

Richard T. Haik, Sr.
U.S. District Judge