# IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

_____

No. 15-30195

_____

D.C. Docket No. 6:13-CV-2609

TAJ AL KHAIRAT LIMITED,

      Plaintiff - Appellee

v.

SWIFTSHIPS SHIPBUILDERS, L.L.C.,

      Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

December 4, 2015

Lyle W. Cayce
Clerk

Certified as a true copy and issued
as the mandate on **Dec 29, 2015**

**Attest:** *Lyle W. Cayce*

**Clerk, U.S. Court of Appeals, Fifth Circuit**

Appeal from the United States District Court for the
Western District of Louisiana, Lafayette

Before DAVIS, BARKSDALE, and DENNIS, Circuit Judges.

J U D G M E N T

This cause was considered on the record on appeal and the briefs on file.

It is ordered and adjudged that the judgment of the District Court is affirmed.

IT IS FURTHER ORDERED that defendant-appellant pay to plaintiff-appellee the costs on appeal to be taxed by the Clerk of this Court.

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

————————

No. 15-30195

————————

TAJ AL KHAIRAT LIMITED,

      Plaintiff - Appellee

v.

SWIFTSHIPS SHIPBUILDERS, L.L.C.,

      Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

December 4, 2015

Lyle W. Cayce
Clerk



**Certified as a true copy and issued
as the mandate on Dec 29, 2015**

**Attest:** *Lyle W. Cayce*
**Clerk, U.S. Court of Appeals, Fifth Circuit**

————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:13-CV-2609

————————

Before DAVIS, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:*

      For Swiftships Shipbuilders, L.L.C.'s challenge to the summary judgment awarded Taj Al Khairat, Ltd., on its breach-of-contract claim regarding their settlement agreement, primarily at issue is whether a genuine dispute of material fact exists for whether Swiftships and Taj reached an oral agreement constituting a novation of the settlement agreement.  AFFIRMED.

————————

    * Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 15-30195

I.

Two contracts form the basis for this dispute.  The first is the settlement agreement, executed in August 2011 by Taj and Swiftships.  To resolve disputes arising from a contract the parties executed the year before, the settlement agreement required Swiftships to pay Taj either a lump sum of $5.2 million, or monthly installments totaling $6.8 million; if Swiftships failed to make timely payment, Taj was entitled to default judgment, which Swiftships expressly waived its right to challenge.  A choice-of-law provision designated Texas law as governing.  Rahman, the United States representative for Taj through its United States subsidiary, Crown Contracting, Inc., signed the agreement for Taj.

The second contract is a master services agreement (MSA) between Swiftships and IWG, Inc., executed in February 2013.  The MSA obligated Swiftships to pay IWG for consulting services on a shipbuilding contract with South Oil Company in Iraq (SOC contract).  The MSA included a merger provision, identifying the MSA as "the entire agreement between the parties . . . , supersed[ing] any oral promises, proposals, representations, understandings and negotiations between the parties respecting the subject matter" of the MSA.  In addition to being the United States representative for Taj, Rahman served as an officer for IWG, and executed the MSA for it.

Taj filed this action in September 2013, claiming Swiftships breached the settlement agreement by failing to make timely payment.  Swiftships did not dispute that it only made one payment under that agreement.  Instead, it claimed, *inter alia*, a novation occurred when the MSA was executed, relieving it of obligations under the settlement agreement.  Along that line, Swiftships contended:  an oral agreement in the summer of 2012 between its then-new owners, brothers Shehraze and Khurram Shah, and Rahman (again, United States representative for Taj and officer for IWG), substituted the MSA for the

2

No. 15-30195

settlement agreement; and, under the MSA, Swiftships' payments to IWG
satisfied Swiftships' debt to Taj. The Shah brothers' attorney, Nubani, was
also present at the summer-2012 meeting at which Swiftships contends it and
Taj reached an oral agreement.

In awarding summary judgment to Taj, the district court ruled that
"nothing in the testimony of the parties permits the conclusion that a meeting
of the minds ever occurred concerning how the Taj debt would be handled, and
therefore, a new oral agreement was never formed which could be considered
a novation of the Settlement Agreement". *Taj Al Khairat, Ltd. v. Swiftships
Shipbuilders, L.L.C.*, No. 13-02609, 2015 WL 464749, at \*5 (W.D. La. 3 Feb.
2015). Additionally, the court held, *inter alia*, "the merger clause in the MSA
bars any novation defense". *Id.*

## II.

Summary judgment is reviewed *de novo*, applying the same legal
standards as the district court. *E.g., Nobel Energy, Inc. v. Bituminous Cas.
Co.*, 529 F.3d 642, 645 (5th Cir. 2008). Viewing all evidence and drawing all
reasonable inferences in the nonmovant's favor, summary judgment is
appropriate when "no genuine dispute [of] material fact" exists and "the
movant is entitled to judgment as a matter of law". Fed. R. Civ. P. 56(a); *see,
e.g., Nunez v. Allstate Ins. Co.*, 604 F.3d 840, 844 (5th Cir. 2010). No such
dispute exists "[i]f the record, taken as a whole, could not lead a rational trier
of fact to find for the nonmoving party". *Dediol v. Best Chevrolet, Inc.*, 655 F.3d
435, 439 (5th Cir. 2011). Once the movant satisfies its burden of demonstrating
no such dispute exists, the nonmovant must point to specific evidence in the
summary-judgment record to demonstrate there is a material-fact dispute
regarding the essential elements of the case. *Forsyth v. Barr*, 19 F.3d 1527,
1533 (5th Cir. 1994). On the other hand, "if the nonmoving party rests merely
upon conclusory allegations, improbable inferences, and unsupported

3

No. 15-30195

speculation", summary judgment may be proper. *Id.* (quoting *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1449 (5th Cir. 1993)).

A.

Before reaching whether there is a genuine dispute of material fact, two points must be addressed.

1.

The district court found no basis for Swiftships' challenges to the validity of the settlement agreement. *Taj*, 2015 WL 464749, at *5–6 & n.4. Those issues are not raised on appeal; therefore, they are waived. *E.g., United States v. Whitfield*, 590 F.3d 325, 346 (5th Cir. 2009).

2.

Similarly, Swiftships does not contest the district court's ruling that the MSA's merger clause bars Swiftships' novation defense. *Taj*, 2015 WL 464749, at *5. The court cited New York law, which the parties agreed governed the MSA, to articulate the enforceability of merger clauses: "The purpose of a merger clause is to require the full application of the parol evidence rule . . . to bar the introduction of extrinsic evidence to alter, vary or contradict the terms of the writing. . . . by evincing the parties' intent that the agreement is to be considered a completely integrated writing". *Id.* at *5 n.4 (quoting *Jarecki v. Shung Moo Louie*, 95 N.Y.2d 665, 669 (2001)) (internal quotation marks omitted). Merger clauses are also generally enforceable under Texas law. *See, e.g., ISG State Operations, Inc. v. Nat'l Heritage Ins. Co.*, 234 S.W.3d 711, 719 (Tex. App.—Eastland 2007).

Swiftships waives any issue concerning the MSA merger provision by failing to challenge this part of the district court's ruling. *Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, L.L.C.*, 637 F.3d 604, 609–10 (5th Cir. 2011). As a result, it arguably forfeits its right to dispute the summary judgment. *See id.* "We will not raise and discuss legal issues that [the appellant] . . . failed to

4

No. 15-30195

assert." *Brinkmann v. Dallas Cty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987).

Assuming this point may be considered, and for our *de novo* review, a plain reading of the MSA merger provision calls into question its applicability regarding the claimed novation. The clause prevents the parties to the MSA from presenting evidence of prior oral agreements between the same parties concerning the subject matter of the MSA. The alleged summer-2012 oral agreement was, according to the Shah brothers, between Taj and Swiftships, *not* IWG. And, the parties to the MSA were Swiftships and IWG, *not* Taj. Although Swiftships contends the debt to Taj was satisfied by payments to IWG under the MSA, Taj is not a party to the MSA. On the other hand, Rahman could execute contracts for both Taj and IWG.

Even assuming *arguendo* the merger clause does not bar our considering evidence of an oral agreement, Swiftships' challenge still fails, for the following reasons.

B.

In maintaining the district court erred in holding Swiftships and Taj did not reach an oral agreement, Swiftships contends: had the court construed all the evidence in the light most favorable to the nonmovant, it would have concluded the Shah brothers' deposition testimony created a genuine dispute of material fact on whether the parties reached an oral agreement and novation; and, therefore, summary judgment was improper.

Under Texas law, novation is an affirmative defense to a breach-of-contract claim. *Honeycutt v. Billingsley*, 992 S.W.2d 570, 577 (Tex. App.—Houston [1st Dist.] 1999). A "[n]ovation is the substitution of a new agreement between the same parties or . . . of a new party on an existing agreement". *N.Y. Party Shuttle, LLC v. Bilello*, 414 S.W.3d 206, 214 (Tex. App.—Houston [1st Dist.] 2013). "Where a novation occurs, only the new agreement may be

5

## No. 15-30195

enforced."  *Id.*  The party asserting novation as a defense must show:  "(1) a previous, valid obligation; (2) a mutual agreement of the parties to the acceptance of a new contract; (3) the extinguishment of the old contract; and (4) the validity of the new contract".  *Vickery v. Vickery*, 999 S.W.2d 342, 356 (Tex. 1999).  In other words, a "novation is never presumed".  *In re Bath Junkie Franchise, Inc.,* 246 S.W.3d 356, 365 (Tex. App.—Beaumont 2008).  Obviously, the party claiming a novation must present evidence showing the parties' intent to effect one.  *Id.*

Furthermore, the requisite "elements of both written and oral contracts are the same and must be present for a contract to be binding".  *Searcy v. DDA, Inc.*, 201 S.W.3d 319, 322 (Tex. App.—Dallas 2006).  An agreement must detail its essential terms such that a court could enforce it.  *E.g., id.*; *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992).  And, the parties must have, *inter alia*, a meeting of the minds, and intend the agreement to be mutual and binding. *See, e.g.*, *Labor Ready Cent. III, L.P. v. Gonzalez*, 64 S.W.3d 519, 522 (Tex. App.—Corpus Christi 2001).  Moreover, the requisite meeting of the minds is evaluated "on the objective standard of what the parties said and did—and not on their subjective state of mind".  *Wal-Mart Stores, Inc. v. Lopez*, 93 S.W.3d 548, 556 (Tex. App.—Houston [14th Dist.] 2002).  "It is well settled law that when an agreement leaves material matters open for future adjustment and agreement that never occur, [the agreement] is not binding upon the parties and merely constitutes an agreement to agree." *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000).

Swiftships points to the Shah brothers' deposition testimony, regarding the summer-2012 meeting, as evidence the parties reached an oral agreement, which substituted the MSA for the settlement agreement.  Nevertheless, that testimony—viewed in the light most favorable to the nonmovant,

No. 15-30195

Swiftships—fails to demonstrate a rational finder of fact could find a meeting of the minds took place, essential terms were articulated, and a court could enforce the articulated terms. *See, e.g., Dediol*, 655 F.3d at 439; *Stanley Boot*, 847 S.W.2d at 221–22.

In support of an oral agreement, Swiftships asserts Shehraze Shah understood the Taj debt would be satisfied by the amounts Swiftships paid IWG under the MSA.  He based this assumption in part on his recollection of Rahman's statements at the summer-2012 meeting: "[W]e will settle the disagreement, and the disbursement will take care of the Taj settlement and whatever is the balance would be considered as a fee for the services" provided under the future MSA.  But the rest of his deposition testimony is ambiguous on whether the parties reached an agreement.  According to him, Rahman said "we will settle all the past dues, and we will move forward *if we can procure this contract, the SOC contract, and the performance bond*".  (Emphasis added.) He also was unclear about whether the SOC contract or the MSA was the vehicle for discharging Taj's debt.  Similarly, he could not articulate the essential terms concerning payment.  Regarding the amount to which the parties allegedly agreed, he testified, "The debt was part of the settlement that we had with $3 million as the principal amount of the debt. . . . [It] was agreed upon [ ] that's what the Taj people wanted, and that's all we [would] pay as part of our settlement".

Like his brother, Khurram Shah testified he believed the payments under what would become the MSA would satisfy the debt to Taj; but, his testimony demonstrates his understanding was contingent on procuring the SOC contract and lacked concrete essential terms.  When asked whether he thought the debt to Taj would be resolved by the future MSA, he answered, "I specifically recall using the words 'bygones are bygones' and 'let's move forward,' and [Rahman] agreed, yes, we're [going to] move forward".  He also

No. 15-30195

conceded he was uncertain what Rahman's understanding was:  "I don't recall distinctly stating that the monies -- I mean, the idea was that, okay, let's move forward. . . . [F]or [Swiftships], I'm very clear what moving forward means, and I don't know what part of that [Rahman] didn't rec- -- didn't understand". Finally, he further confused the issue when he testified that he understood the entire debt was not "being dismissed or [ ] forgotten": "[W]hy would somebody want to give that up?"

Even if the deposition testimony by the Shah brothers could be seen as suggestive of an oral agreement, neither their attorney, Nubani, nor Rahman's deposition testimony supports an oral agreement.  Nubani stated "there was a reference made to an agreement that would be . . . produced, [but] there was no discussion at the time of what the provisions of that agreement would be". Swiftships' attorney further testified: "I don't know if there was ever a formal sitting down between all of the parties involved in this matter"; "no one had the full picture at any given time[,] [b]ecause things were not defined"; and "people were talking based on their assumptions".  And, Rahman denied the formation of any agreement that replaced the debt to Taj with Swiftships' payment to IWG.

Moreover, the Shah brothers believed Rahman represented Taj, not IWG, at the summer-2012 meeting. Although their attorney Nubani's imprecise recollection of the summer-2012 meeting included IWG, the Shahs suggest in their deposition testimony that Rahman created IWG to collect on the original Taj debt and render their oral agreement unnecessary. The parties do not brief this contention, however; and no other evidence in the record besides the Shahs' deposition testimony supports it.

Furthermore, any such suggestion fails to explain why Swiftships signed the MSA, which contained references only to IWG, and not Taj.  As the district court noted, the "MSA makes no mention of Taj, the Settlement Agreement, or

8

No. 15-30195

Swiftships' obligations thereunder". *Taj*, 2015 WL 464749, at \*5.  Instead, the MSA provides Swiftships' payments to IWG are in consideration for IWG's services.   As self-serving testimony unsupported by any other summary-judgment evidence, and left un-briefed by Swiftships, this suggestion fails to overcome summary judgment.  *See DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir. 2005); *Hardison v. Abdon Callais Offshore, L.L.C.*, 551 F. App'x 735, 738–39 (5th Cir. 2013) (unpublished).   If the MSA in 2013 was the memorialization of the alleged oral agreement in the summer of 2012, it does not demonstrate satisfaction for Swiftships' debt to Taj.

## III.

For the foregoing reasons, the judgment is AFFIRMED.

# *United States Court of Appeals*

**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE**
**NEW ORLEANS, LA 70130**


December 29, 2015


Mr. Tony R. Moore
Western District of Louisiana, Lafayette
United States District Court
300 Fannin Street
Suite 1167
Shreveport, LA 71101-0000


     No. 15-30195    Taj Al Khairat Limited v. Swiftships
Shipbuilders, LLC
               USDC No. 6:13-CV-2609


Dear Mr. Moore,

Enclosed is a copy of the judgment issued as the mandate and a
copy of the court's opinion.


                         Sincerely,

                         LYLE W. CAYCE, Clerk

                         By: _____
                         Connie Brown, Deputy Clerk
                         504-310-7671

cc:
     Mr. Michael B. Bennett
     Mr. Faisal M. Gill